FILED

DEC 1 8 2020



CLERK. U.S. DISTRICT CLERK
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY

## BEFORE THE UNITED STATE DISTRICT COURT
### WESTER DISTRICT OF TEXAS
San Antonio Division
655 E. Cesar Chavez
San Antonio, Texas 78206-1106

| | |
|---|---|
| CARLOS ANTONIO RAYMOND, )<br>Plaintiff ) | **CIVIL ACTION CASE NO.** |
| V.S. ) | **SA20CA1439** |
| FLAGSTAR BANK )<br>Defendant, ) | **FB** |
| M. Samuel Daffin, II, - Mary A. Daffin, - Brian S. Engel, )<br>James C. Frappier, Robert F. Frappier, Steve Turner, )<br>BARRETT DAFFIN FRAPPIER TURNER ENGLE,<br>LLP, IN THEIR OFFICIAL CAPACITY AS TRUSTEE<br>OF ASSETS<br>Defendants | **DECEMBER 18, 2020** |

## _PLAINTIFF'S ORIGINAL COMPLAINT FOR REDRESS_

### _DEMMAND FOR JURY TRIAL_

COMES NOW, Carlos Antonio Raymond, proceeding Prose, (herein after "Plaintiff"), in the above style and numbered case brings this Complaint for: Plaintiff, Carlos Antonio Raymond proceeding Pro Se files his Original Complaint against Flagstar Bank & Its Trustees for: **(a)** Wrongful Foreclosure **(b)** Breach Of Deed Of Trust **(c)** Slander Of Title **(d)** Slander Of Credit **(e)** Violation Of DUE PROCESS Clause Of The FIFTH And FOURTEETH Amendment **(f)** Violation of RESPA **(g)** Negligent and intentional Misrepresentation **(h)** Infliction of Mental & Emotional Distress Wrongful Acceleration Of Mortgage Note.

### SIMILARLY SITUATED AND PENDDING CASES BEFORE THE COURT

5:19-CV-00596, Carlos Antonio Raymond V, J.P. Morgan Chase And Flagstar

5: 2020-CV-00965- Carlos Antonio Raymond V, J.P. Morgan Chase And Flagstar

5: 20-CV-01371 - Carlos Antonio Raymond V, IVEST PROPERTIES, LLC

1

## I.    PRELIMINARY STATEMENT

Plaintiff was fraudulently misrepresented in a prior case, (J.P. Mortgage Bank (5:19-CV-00596) was promised that foreclosure actions would not happen. Plaintiff mortgage loan exchanged hands between two servicers, J.P. Morgan Chase Bank & Flagstar Bank effective December 04, 2018. Both servicers of the loan FAILED to provide the required Due Process 'NOTICE' required By the Real Estate Settlement and Procedure Act RESPA. The Report And Recommendation found that the previous servicer of the mortgage note, J.P. Morgan Chase failed to provide the NOTICE OF LOAN Transfer to Plaintiff, but respectfully, the Court did not charged Defendant Flagstar with the same, who also failed to provide the RESPA required NOTICE Of Loan Transfer to Plaintiff Raymond when they took over the loan after the effective date, December 4, 2018).

Adding insult to injury, the current servicer of the loan (Flagstar Bank) waited FIVE long months and rushed to foreclosure on the property without affording the NOTICES required by the Texas Property Code Section 51.002(d).

Both decisions and actions are WRONG, UNJUST and UNFAIR, as a matter of law invoking this Court's Intervention.

Plaintiff, Carlos Antonio Raymond has maintained repeatedly and is now doing so in this case: In that, he DID NOT DEFAULTED ON HIS MORTGAGE NOTE. Therefore, the proper remedy in this case is to RESCIND, SET-ASIDE (VOID) the January 7, 2020 foreclosure sale and return TITLE to Plaintiff, the original owner of the property.

## II. NATURE OF THE LAW SUIT

This is a suit to: rescind, set aside, invalidate and otherwise VOID Trustee Deed and return title and ownership of the property to the undersigned original owner.  Plaintiff, Carlos Antonio Raymond, and third  party purchaser, Ivest Properties should take nothing.

Defendants foreclosed on the mortgage of Plaintiff by the exercise of the power of sale contained in the mortgage note in violation of the provisions of the Texas Prop. Code Ann. Sec. 51.002 et seq. and violation of violation of RESPA, 12 USC Sec. 1024, et seq. Such all violations resulted in an inadequate Sale Price.

## III. THE PARTIES TO THIS COMPLAINT

PLAINTIFF: Carlos Antonio Raymond, Prose, proceeding In Forma Pauperis and is now, and at all times relevant to this action, a resident of Bexar County Texas: A License REALTOR (Real Estate Sales Agent); a 100% Disabled American (Army) Veteran.

DEFENDANT: Flagstar Bank herein after, ("FLAGSTAR") is a National Banking Association and whose corporate headquarters is location is 5151 Corporate Drive Troy, Michigan 48098, and is doing business in Texas.

## IV. THE PROPERTY:

The Properly being commonly known as 8054 Silver Grove, (Far West) Bexar County in San Antonio, Texas 78254

## V. JURISDICTION AND VENUE

SUBJECT-MATTER JURISDICTION: This Court has SUBJECT-MATTER jurisdiction over this matter pursuant to 28 U.S.C. 1331, which provides District Courts with Jurisdiction over civil actions arising under the United States Constitution or laws of the United States Of America.

| FEDERAL QUESTION JURISDICTION: | This court have Federal Jurisdiction because the case presents a Federal question, 28 U.S.C. SEC 1331, and it involves an agency of the United States, 28 U.S.C. SEC 1345.5. |
| --- | --- |
| DIVERSITY OF CITIZEN JURISDICTION: | This court have DIVERSITY Of CITICINSHIP jurisdiction over this matter pursuant to 28 U.S. Code § 1332 because both Plaintiff and Defendant resides in different state and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. |

VENUE: in the Western District of Texas, San Antonio Division is proper pursuant to 28 U.S.C. § 1391 because Plaintiff, Carlos Antonio Raymond is located in this District, a substantial part of the events or omissions on which the claims asserted herein are based occurred in this District and the subject contract was executed in the District.

## VI. BACKGROUND AND FACTUAL ALLEGATIONS:

Plaintiff states and restates and incorporates herein all of his statements and allegations contained in the preceding paragraphs in their entirety, as if fully rewritten.

1. On or about October 30, 2009, Plaintiff Carlos Antonio Raymond purchased a 1700 square foot, 3 Bed Rooms, two bathroom and two covered car garage, which is located at 8054 Silver Grove, San Antonio, Texas 78254. To finance the purchase of the Property, Plaintiff signed a promissory note ("NOTE") in the approximate amount of $ 158,000.00, which was secured by a DEED OF TRUST pledging his interest in the Property as security ("DEED OF TRUST"). The original holder of the Note and Deed Of Trust was Gardner Financial Services.

2. Plaintiff did [NOT] defaulted on his Note and in fact his mortgage payment was current as of this date, November 05, 2018. At no time between December 2018 and April 2019 did Defendants send any notice or breach letter stating that his in default and the amount owed. In such a case, Plaintiff was [NOT] given the slightest chance and opportunity to cure the allege default or the missing payment they wrongfully claimed Plaintiff owe. This debt was not a valid dept, and it was grossly wrong for Defendnt to accelerate the Mortgage Loan. Defendant failed to afford Plaintiff  his right to bring a court action asserting that there was no default, to reinstate after acceleration, or to raise any other defenses. As a result, Plaintiff was prejudiced (SUFFERED DAMAGES) in the form of foreclosure and suit to evict. In addition, Defendants, without the use of force, unlawfully injured or interfered with the possession and enjoyment of Plaintiff's personal property.

4

3. Defendant J.P. Morgan Chase Bank, N.A. was the most recent and previous servicer of RAYMOND'S loan along the chain of servicers, and made automatic routine monthly withdraws from Raymond's Bank account to cover his mortgage payment. Defendant, J.P. Morgan Chase routinely, regularly and automatically withdrew payment from Plaintiff checking account for nearly a decade (TEN YEARS) long. Since the payments were taken out automatically from Raymond account, Raymond only received annual receipts of withdrawals and an escrow balance to be used for his record and income tax filing.

4. On November 13, 2018, Plaintiff contacted J.P. Morgan Chase Bank to request a "pause" of his December 05, 2018 and January 05, 2019 automatic mortgage payments.  The reason for this request was a twofold hardship: Raymond needed funds to pay for the Christmas and New Year's day holidays, and to provide financial support for his family members and close friends who had been displaced by a natural disaster.

5. Plaintiff, Raymond spoke with a customer service representative, Abaham Gutierrez, regarding his hardship. M. Gutierrez approved his request and stated J.P. Morgan Chase Bank would pause his automatic mortgage payment withdrawals from his checking account for the month of December 2018 and January and would resume automatic payment in February 2019.

6. Unbeknown to Plaintiff Raymond, however, J.P. Mortgage was transferring services of his loan to Defendant Flagstar (FSB), effective December 4, 2018. Both J.P. Morgan Chase Bank and Defendant Flagstar Bank and Raymond had orally agreed to the transfer of service on November 19, 2018, but Mr. Abraham Gutierrez never mentioned the transfer and Raymond received no other NOTICE of the transfer.

7. When automatic withdrawals were supposed to resume in February 2019, no withdrawals were made. The las mortgage payments was automatically withdrawn by J.P. Morgan Chase Bank on November 05, 2020.

8. Plaintiff Raymond first became aware of the mortgage default on April 10, 2019, when he was called by a representative from the Department of Veterans Affair ("VA", Mrs. LaTonya Morris, who told him that Flagstar "had initiated or threatened to foreclose on his home on June 4, 2019, due to FIVE Months mortgage default. Here, there was not Breach Letter; no Notice of Default; no notice of sale was every provided to Plaintiff. Instead, Defendant ignored the requirements of the Texas state Law and the provision of the Deed Of Trust and rushed to accelerate the note. Plaintiff had no opportunity to correct or cure the default or missing payment Flagstar claimed he owed. Moreover, Plaintiff did not had the slightest opportunity to sell his home or to consult with an attorney to help represent him because Plaintiff did not know of his rights under State law.

9. Plaintiff called Flagstar immediately and told its representative that his loan was in a forbearance per the agreement with J.P. Morgan Chase Bank. The representative requested that Raymond send a copy of the agreement to Flagstar.

10. The same day, Plaintiff Raymond send a written request to J.P. Morgan Chase Bank for a copy of the alleged forbearance agreement and additional information regarding his loan. J.P. Morgan e-mailed Raymond two documents: (1) a copy of an e-mail detailing the agreement regarding the December 2018 and January 2019 payments, and (2) a copy of NOTICE of Loan Transfer detailing the service transfer from J.P. Morgan to Flagstar, dated November 20, 2018, upon which Raymond disputed.

11. The copy of the e-mail stated that an automatic payment would be paused in December 2018 and January 2019 and would resume in February 2019. The e-mail did not, however state there was a forbearance simply requested the December and January payments be made by check instead of automatic withdrawals to be send to J.P. Morgan Chase Bank's address. The purported or questionable loan transfer notice stated that service of Raymond's loan had been transferred to Flagstar effective December 4, 2018, and that all payments should be sent to Flagstar after that date.

12. Plaintiff provided the e-mail agreement to Flagstar, advising them he believed it constituted an "IMPLIED FORBEARANCE AGREEMENT" between himself and J.P. Morgan, and that he did, Raymond did NOT owe mortgage payments for December 2018 and January 2019.

13. Flagstar stated that they would initiate or conduct an investigation immediately and offered no commitment or promise to stop the foreclosure, if the debt was deem invalid.

14. On June 19, 2019, Plaintiff received a letter from Flagstar stating that the "debts was valid" and elected to move forward with foreclosure of the property which was set for June 4, 2019. (SEE PLAINTIFF EXHIBIT)

15. Upon information and belief, such statement was FALSE and Defendant Flagstar new it was false and it was quite obvious that Defendant Flagstar took over the loan on or after the effective date, December 4, 2018, and they should have investigated alleged debt or five months missing payments before they transferred and accepted the loan from J.P. Morgan Chase Bank.

16. In addition, Defendant Flag Star new or should have known about the forbearance agreement that was offered and accepted between the parties on November 20, 2018. 17. Defendant Flagstar never attempted to investigate the forbearance agreement and rushed to reject it and exercised its power of sale clause. Their only aim was to proceed with the foreclosure as fast as they could. (SEE PLAINTIFF EXIBIT _____).

18. On this very same day, April 10, 2020, and while on the telephone, a representative of Flagstar, verbally stated and promised that they will I STOP or not go through with the foreclosure set for Jun3 4, 2020 only if Plaintiff will bring the loan current by paying the note for December 2018, January 2019 and February 2019.

19. Although plaintiff was very confused and reluctant to make those payments, Plaintiff just wanted to have the Foreclosure STOP until the previous server of the loan, J.P. Morgan Chase Bank could explain the situation to him.

So, he justifiably relied on the misrepresentation or false promised made by Flagstar representative and tendered the three monthly (December 2018, January 2019 and February 2019) payments in the full payment amount of $ 3,192.63, as was wrongfully demanded by Flagstar, to his detriment. Plaintiff suffered other damages, including out of-pocket damages, and experience foreclosure on his home and eviction suit. Since the wrongful foreclosure, January 7, 2029, Plaintiff was hospitalized at the VA hospital at last THREE time, and the most recent was December 2, 2020. As we speak, Plaintiff is in tremendous amount of pain and anxiety. Plaintiff doe not know of his legal right under the law and is having great difficulties articulating and developing this Complaint. There are much more factual allegations and cause of actions that is needed to explain why the Title to Plaintiff property should be returned to him. It is very painful and stressful knowing that someone can steel your property at the blink of an eyelid, as this is the case herein. Plaintiff has always maintained a high FICA score on all three credit reporting agencies, and now such credit scores has been reduced below 50 because of the wrongful foreclosure and eviction suit.

20. Upon information and belief, Defendants may have even waived or "abandoned" the acceleration. Never-the-less the following day, Flagstar Representative called and rejected the $3,000.63 tendered by Raymond, but was rejected by Flagstar who claimed it was rejected due to the foreclosure already set for June 4, 2020. Here again, Defendant wrongfully accelerated the Mortgage note after this payment was tendered.

21. Upon information and belief, Plaintiff was informed on May 8, 2019 that his loan had been accelerated, and foreclosure would take place on scheduled on June 4, 2019.

22. On June 3, 2020, Plaintiff filed a law suit to stop the foreclosure of his property and in the body of the THIRD AMENDED COMPLAINT, October 17, 2019, Plaintiff included a MOTION for Temporary Restraining Order, Preliminary Injunction and Permanent Restraining Order, but it went unrecognized and ruled on by the Court.

23. August 17, 2020 the Bexar County Presiding  judge, J. Frank Davis entered a FORECLOSURE JUDGEMENT on the property based on false evidence provided by Ivest Property through counsel. (SEE RECORD).

24. On or about  January 06, 2019, Plaintiff filed a motion for TRP, PI and PRO with the 45Th Judicial District Court to STOP the Foreclosure. Plaintiff served each Defendants listed herein by  E-Mail, Fedex Fascimill and by Fedex Overnight expressed mail.

25. Just prior to the foreclosure sale, Plaintiff filed suit in the 45 Judicial District Court seeking Temporary Restraining Order and to recover the unpaid principal and interest on the loan. Plaintiff did everything he possibly could to explain the irregularities in the foreclosure proceedings, but without legal counsel, he was not given fair and equal opportunity to stop the foreclosure and Defendant Flagstar took unfair advantage of the situation and moved this case to this court. All of Defendants Attorney enjoyed and favored a huge advantage of Plaintiff, Pro se.

26. Defendant Flagstar MOVED the case from The District Court To The Federal Court and then later the Federal District Judge Consolidated both cases. Plaintiff requests that each of the motions that was dismissed be reinstated, included the MOTION FOR REMOVAL from the Civil District Court to this Court.

27. On January 7, 2020, Defendants Flagstar 'wrongfully' foreclosed on the property at 8054 Silver
Grove, San Antonio, Texas 78254 by exercise of the power of sale contained in the mortgage.

28. Defendant Flagstar Bank foreclosed on the mortgage of Plaintiff Raymond even when Plaintiff produced written evidence that he did not default on his loan; That his loan was current and that he had a forbearance agreement with his previous servicer of the Loan, J.P. Morgan Chase Bank.

29. Upon information and belief the foreclosure was conducted in a manner not authorized by statute. More specifically stated, the foreclosure was Not in compliance with the 'provision was required as a condition of a valid foreclosure sales  and that Defendant Flagstar Bank failed to meet such compliance with the terms of the mortgage contract or deed of trust.

30. Upon information and belief, the evidence develop by discovery and trial will show whereas each of not all of the following irregularities or defects resulted in an INADEQUATE SALE PRFICE. Inadequate Sale Price:(a) Defendant Flagstar Bank was required by the deeds of trust clause provide a NOTICE, which is often called a BREECH LETTER giving Raymond 30-days to cure the Default before it can accelerate the loan (call it due) and proceed with a foreclosure action and Defendant Flagstar Bank failed to do so. Plaintiff suffered damages because he lost title and possession of his property. Although Plaintiff is still living in the property, he does not feel he is living free because J.P. Morgan Chased failed to withdraw money from Plaintiff's checking account and account for the Three month forbearance on the matter. Moreover, Defendant REFUSED and REJECTED the $3,000.00 Plaintiff tendered to bring his loan current and to prevent foreclosure of his property.

31. Defendant Flagstar Bank was required by the DEED OF TRUST clause to send a NOTICE, which is often called a NOTICE OF DEFAULT and intent to accelerate by certified mail that provides at least 20 days to cure the default before notice of sale can be given, and Defendant Flag Bank failed to do so.

32. Defendant Flagstar Bank was required by the deeds of trust clause that to send a NOTICE, which is often called a NOTICE OF ACCELERATION or with intent to accelerate by certified mail that provides at least 20 days to cure the default before notice of sale can be given, and Defendant Flag Bank failed to do so.

33. On or about May 18, 2020, Defendant Flagstar Bank executed acceleration of Plaintiff's Note breach of the mortgage DEED OF TRUST.

34. By failing to provide each of the above information, Plaintiff was prejudiced and otherwise deprived of his rights to keep and stay in is home. Plaintiff feels that he was not given or allowed sufficient time between the date he became aware of the default (April 10, 2020 and June 4, 2020) to cure the default, which he did by providing $3,000.00 and to seek counsel to represent him; to sell his property, and the right to bring a court action to assert the non-existence of a default or any other defense.

35. Flagstar Bank and its Trustee have purposefully, intentionally, and wrongfully violated the Federal various Federal and State Laws and constructed and carried out a fraudulent actions by way of the foreclosure and Substitute Trustee's in a Non-Judicial Foreclosure Sale in violation of the Texas Finance Code sections 392.301(8) and 392.304 and other various State Laws in Ch. 27.

36. upon discovery and assistance of Counsel, Plaintiff seeks to know whether or not the foreclosure judgment granted by the Bexar County Civil Presiding Judge, J. Frank Davis on August 17, 2020 dramatically lengthening the effective redemption period permitting the Plaintiff to live in the property for any extended period of time without paying his mortgage note or without being evicted from the property.

37. Plaintiff was not afforded enough time between the acceleration date of May 18, 2020 and the foreclosure date, June 4, 2020 to redeem the property within the redemption period. Plaintiff is entitled to any surplus generated by the foreclosure sale.

38. Plaintiff had no realistic hope of getting his $67,000 equity out of the property and was prevented from doing so during the SHORT 30-day constraint from the date he found out about the default, which was April 10, 2020 and the date of the foreclosure sale, June 4, 2010.

39. The winning bid deprived Plaintiff of significant equity he has in the property. Plaintiff seeks and ORDER by this Court to STAY enforcement for the foreclosure judgment.

## CAUSE OF ACTION FOR REDRESS (RELIEF)

### COUNT NO.1:

### WRONGFUL FORECLOSURE [PAR. 2-9 ]
### TEX. PRP. CODE 51.002(d) et seq.,

Plaintiff states and restates and incorporates herein all of his statements and allegations contained in the preceding paragraphs in their entirety, as if fully rewritten.

40. Defendants action to foreclosed on Plaintiff's property is in direct non-compliance with Terms Of The Mortgage deed of trust and have done so in a manner not authorized by the Texas Property Code Sections 51.002 et seq. As such one or two, if not all of the Defects listed below resulted in an Inadequate Sale Price.

41. Defendants failed to mailed two certified Foreclosure notices in accordance with Texas Property Code sections 51.002 et seq and the deed of trust.

42. At no time did Plaintiff received the required "Notice of Default (NOD) and Intent to Accelerate." Since Plaintiff did NOT defaulted on his mortgage note, and in light of the fact of the forbearance period (DECEMBER 2018 – FEBRURUARY 2019).

43. Assuming Defendant send the NOD, which they did not, it make sense that Plaintiff Raymond would have immediately contacted his previous servicer, J.P. Morgan Chase and question those two documents.

44. Defendant Flagstar Bank was required by the DEED OF TRUST and Texas Property code listed above to send a NOTICE, which is often called a BREACH LETTER giving Raymond 30-days to cure the Default before it can accelerate the loan (CALL IT DUUE) and proceed with foreclosure or before stating a foreclosure and Defendant Flagstar Bank failed to do so.

45. Defendants were required by the deeds of trust clause to send a NOTICE, which is often called a NOTICE OF DEFAULT and intent to accelerate by certified mail that provides at least 20 days to cure the default before notice of sale can be given, and Defendant Flag Bank failed to do so.

46. On or about May 18, 2020, Defendants executed the acceleration of Plaintiff's Note, and breached the mortgage DEED OF TRUST, which provides in relevant part:

> "That prior to acceleration of the loan following any breach of the mortgage by Plaintiff, Flagstar Bank was required to notify the Plaintiff of each of the above (a) Breach Letter (b) Notice Of Default (c) Action required to cure the default (c) a date, not less than [THIRTY] days from the date the notice was given and that (d) failure to cure the default on or before the date specified in the notice may result in acceleration."

47. In a like manner, Defendants were required by the DEED OF TRUST to send a NOTICE, which is often called a NOTICE TO ACCELERATE by certified mail that provides at least 20 days to cure the default before notice of sale can be given, and Defendant Flag Bank failed to do so.

48. Plaintiff was deprived of his rights and was not allowed sufficient time between the date he became aware of the default (April 10, 2020) and the actual foreclosure was set (JUNE 4, 2020) to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense.

49. Plaintiff Raymond is a license Real Estate Agent since 1986 and has been Marketing, Listing and Selling Residential Properties for thirty-five years. The Description of Plaintiff property: 1700 square foot, -3-bathrooms and two Bedroom. The appraised value of the property is around $217,000 to $240,000 (AVERAGE $ 230,000.)

50. Upon information and belief, Defendant Trustee sold the Property for $166,000.00 which was significantly less than what the property is worth, $230,000.00. As such a defect in the foreclosure sale proceedings actually caused the grossly inadequate sale price. Once again, a grossly inadequate (LOW) sale price was caused by any defect in the foreclosure proceedings. (SEE PLAINTIFF EXHIBITS)

On August 17,000, The Bexar County Civil Presiding Judge, J. Frank Davis wrongfully and disputedly handed full possession to the property to Ivest Property, LLC who also has title to the property and became the owner. So Plaintiff LOSS TITLE AND POSSESSION of the Property. To date, Plaintiff still remain in the property and is now being threatened with a forceful Detainer (eviction) Action.

51. Upon information and belief, the property may or may not have posted in the local San Antonio newspaper, and there are reasons to believe it was not posted on the front step of the Bexar County Courthouse. Upon information and belief, Defendants purchased the property as REAL ESTATE OWED.

52. Upon information and belief, the reason Defendants Foreclosed on Plaintiff's homestead was due to any of the defects in the foreclosure proceedings and opened and allowed Invest Property to bid a grossly inadequate or LOW purchase for the Property, $166,000.00. This selling price was much too low. Since the Foreclosure, Plaintiff has received lots of telephone offering to help recover the equity remaining on the sale of the property. Such offers was not in Plaintiff's best interest because he did NOT defaulted on his Mortgage not and it was wrong for Defendant Flagstar to accelerate his not and foreclosed on the property without any justification whatsoever.

53. Because of the difference between the price paid and the fair market value of the property was so grossly inadequate, unjust and wrong plaintiff file this law suit invoking the court's intervention.

54. Upon information and belief, Defendant acted in violation of the law in order to chill the bidding process and to prevent him or the general public to freely bid on the property and worst to STOP or PREVENT Plaintiff Raymond to exercise his right to STOP the foreclosure on June 4, 2019. But once Raymond realize he irregularities or defect listed above, he took action stopped the foreclosure the day before on June 3, 2019.

55. As a proximate result of the negligent actions of both Defendants in this case, Plaintiff have suffered consequential damages (FORECLOSUE AND EVICTION) and will continue to suffer additional damages in an amount to be fully proved at the time of trial.

## COUNT NO. 2 [4-9]

## BREACH OF CONTRACT DEED OF TRUST
### (TEX. PRO CODE 51.002(d) et seq

Plaintiff states and restates and incorporates herein all of his statements and allegations contained in the preceding paragraphs in their entirety, as if fully rewritten.

56. In relevant part, the elements of a breach of contract action are: (1) the existence of a valid contract; (2) performed or tendered performance by the Plaintiff; and (3) breach by the Defendant.

# DEED OF TRUST
### OCTOBER 21, 2009
### ORIGINAL LENDER Gardner Financial Services, ltd

57. NON-UNIFORM COVENANT – Page 10 Of 13 Form 3044 1/01 – 8/3/2020:

Borrower and Lender further covenant and agrees as follows:

**2**   **"Acceleration; Remedies, <u>Lender shall give notice to Borrower prior to acceleration</u> following Borrowers' breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). <u>The Notice shall specify</u>: (a) the default; (b) <u>the action required to cure the default</u>; (a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security instrument and sale of the property. The notice shall further inform a Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law.  Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this  section 22, including, but not limited to reasonable attorney's fees and cost of title evidence. For the purpose of this Section 22, the term "Lender" includes any holder of Note who is entitled to receive payments under the Note."**

58. Plaintiff did [NOT] fall behind or his mortgage payment or note because he was on a forbearance agreement with the previous servicer of the note, J.P. Morgan Chase.

59. And even if such were the case, which obviously it was NOT, Defendants (FLAGSTAR) waited FIVE longs months DECEMBER 2018 – April 2019- 150 Days) to take action. In fact, Defendants did NOT reached out to Plaintiff in any way to let him know about the purported missing payments.

60. Instead, Defendant contacted the Department of Veterans Affairs, Mrs. Latonya Morris regarding the FIVE missing payments and that their intent to accelerate and foreclose on the loan.

61. Federal mortgage servicing law requires Defendant, the servicer of the loan to contact (or attempt to contact) Plaintiff by telephone or by mail to discuss foreclosure alternative (Loss Mitigation) no later than 36 days after a missed payments and again within 36 but no more than 45-days after each following missed payments.

62. So here was FIVE MONTHS (150 days) passed by and Defendant made no attempt to contact Plaintiff either by CERTIFIED BREACH LETTER or otherwise to arranged a face-face meetings with Plaintiff in violation of pursuant to the procedural requirements of the law. (51.002 of the Texas Property Code.

63. Defendants failed to provide by CERTIFIED mail a NOTICE Of DEFAULT in accordance with Property Code sections 51.002 et seq., and the deed of trust.

64. Defendants failed to provide by CERTIFIED mail a NOTICE Of INTENT TO ACCELERATE in accordance with Property Code sections 51.002 et seq., and the deed of trust.

65. Defendants failed to affords plaintiff the opportunity for the him to cure the debt they claimed he owed with it (at least 20 days before the foreclosure sale.

# COUNT NO. 3
## SLANDER OF TITLE [      ]
### (   )

Plaintiff states and restates and incorporates herein all of his statements and allegations contained in the preceding paragraphs in their entirety, as if fully rewritten.

66. Both Defendants have caused to be recorded various documents including a Notice of Trustee Sale which has severely impaired Plaintiff's TITLE which constitute Slander Of Title and Plaintiff should be awarded resulting damages to be fully proved at the time of trial. Plaintiff does not know of his legal rights, and is highly concerned that Defendants may have inserted bad faith legal language that will encumbered the property for years to come.

Defendant uttered and publish disparaging words saying that Plaintiff Defaulted on his mortgage loan, which is completely false and malicious as a matter of fact.

Plaintiff maintained all along that he did not defaulted or missed any payments on his loan, and it was wrong for Flagstar to accelerate and foreclosed on the property.

As a result, Plaintiff sustained Special damages causing Defendant to obtained Legal Title and possession of the property. Plaintiff possessed an estate or interest in the property.

Plaintiff is a home-body and lives alone with his two VA service dogs. He does not have any family and spend time on his knee praying every single day trying to understand the meaning of all this. He has paid his mortgage note every single month for TEN years and suddenly his mortgage note is accelerated with due process NOTICE.

## COUNT NO. 4
## SLANDER OF CREDIT [4-9]

Plaintiff states and restates and incorporates herein all of his statements and allegations contained in the preceding paragraphs in their entirety, as if fully rewritten.

67. Defendants incorrectly reported that Plaintiff was in default to one or more credit reporting agencies, resulting in Plaintiff having negative information on his credit reports and the lowering of his FICO scores.

68. Once again, Plaintiff did NOT defaulted on his Mortgage loan, which was current as of November 05, 2018. The actions and inactions of both Defendants have severely impaired Plaintiff Raymond's good reputation. Plaintiff is entitled to damages, including statutory punitive damages pursuant to state and Federal law, all to be proved at the time of trial.

## COUNT NO. 5

## (VIOLATION OF DUE PROCESS
## FIFTH AND FOUTEENTH AMENDMENTS)

Plaintiff states and restates and incorporates herein all of his statements and allegations contained in the preceding paragraphs in their entirety, as if fully rewritten.

*"No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation. "*

69. NOTICE. "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."

70. Plaintiff Raymond did not receive proper and adequate NOTICES by CERTIFIED MAIL sent to Plaintiff home address, which is a violation of his DUE PROCEE RIGHTS.

71. Defendants Flagstar deprived Plaintiff of his legal and constitution rights fight the foreclosure sale of his home; to cure the default; to place his home for sale on the open market; to seek and secure legal counsel to represent him; to prepare and gather evidence to be presented.

72. Both Defendant's created a RUSH or URGENCY to accelerate and foreclose on the property, and despite evidence that he did not defaulted on his home; that he had a forbearance agreement with his previous servicer of the Loan, J.P. Morgan Chase Bank.[1]

## COUNT NO. 6 [4-9]
## NEGLIGENT AND INTENTIONAL MISREPRESENTATION

Plaintiff states and restates and incorporates herein all of his statements and allegations contained in the preceding paragraphs in their entirety, as if fully rewritten.

73. Defendants violated a legal duty of care they owed Plaintiff under the Promissory Note and Deed of Trust. A Representative of Flagstar recklessly made a false statement, without a reasonable belief that it is true, for the purpose of inducing him to make payments and bring his loan current.

---

[1] The Court should note that J.P. Morgan Chase Bank is currently a Defendant in this case 5:19-CV-00596 wherein was charged with Fraudulent Misrepresentation and failure to Provide NOTICE required by RESPA. Plaintiff requests that this Court Charge Defendant, Flagstar Bank the equal violation because both failed to provide the 'NOTICE' required by RESPA.

74. Defendant had a duty to Plaintiff to provide notice of any transfer, assignment, or sale of the note, to properly manage the loan and the escrow amount, to comply with the notice provisions contained in the deed of trust before accelerating the note and foreclosing on the property, and, when applying for a mortgage modification, to protect their rights and not mislead them.

75. As shown above, Defendant breached the duties it owed to Plaintiff and as a result of this breach Plaintiff was damaged.

76. The duty of the Defendant can be found in the regulation of the Department of Housing and Urban Development ("HUD") which is incorporated with the Deed of Trust.

77. As a result of Defendant's negligence, Plaintiff has lost title to his property and is being evicted.

78. When Plaintiff tendered the amount demanded, defendant rejected the payment and Plaintiff was prejudiced by the false information. you to enter into a business transaction.

79. The Texas Supreme Court has outlined the four elements of negligent misrepresentation as follows:

1. The defendant makes a representation "in the course of his business" or in pursuit of a transaction where he has a personal financial interest;

2. The defendant supplies "false information" to "guide" others in their own business;

3. The defendant failed to "exercise reasonable care" in gathering or disseminating the false information; and

4. The plaintiff suffered a financial loss due to his or her **"justifiable reliance"** on the defendant's representations.

5.

## COUNT NO.7
## INFLICTION OF MANTAL AND EMOTIONAL DISTRESS

Plaintiff states and restates and incorporates herein all of his statements and allegations contained in the preceding paragraphs in their entirety, as if fully rewritten.

### [(SEE MEDICAL RECORDS (SEALED)]

80. As a further proximate result of Defendants action described herein and the consequences proximately caused by it, as hereinabove alleged, Plaintiff RAYMOND suffered severe humiliation, mental anguish, and emotional, mental and physical distress, and has been diagnosed (INJURED) in the mind and body as followed: Post Traumatic Stress Disorder (PTSD) Exacerbation of General Anxiety Disorder and Respiratory Bronchial Asthma.

81. Plaintiff was admitted and treated at the Veterans Administration Medical Center on both occasions since the SUITE TO Evict was filed with this Court. **The defendants have intentionally or negligently taken actions which have caused the plaintiffs severe emotional distress.**

## COUNT NO. 8

### WRONGFUL, UNJUSTIFIED AND UNREASONABLE ACCELERATION OF NOTE [2-20]

TEX. PRP. CODE 51.002(d) et seq.,
Texas Debt Collection Practices Act (DCPA)
Texas Deceptive Trade Practices Act (DTPA)
CHAPTER 17 Sec. 17.01.

Plaintiff states and restates and incorporates herein all of his statements and allegations contained in the preceding paragraphs in their entirety, as if fully rewritten.

The DEED OF TRUST and Additionally, Tex. Prop. Code §51.002(d) requires that a lender on a debtor's residence provide at least twenty (20) days written notice of intent to accelerate by certified mail, and Defendant failed to comply with the provision of this Texas Law. That section applies regardless of any agreement to the contrary. *Rey v. Acosta*, 860 S.W.2d 654, 657 (Tex. App.--El Paso, no writ).

The trustee under a deed of trust must conduct a foreclosure sale fairly and may not discourage bidding by acts or statements made before or during the sale. However, the trustee has no duty to take affirmative actions beyond that required by statute or the deed of trust, and therefore it was wrong for Defendant to "Chilled Bidding before or during the sale"

### CONCLUSION AND PRAYER RELIEF

WHEREFORE, having set forth various causes of action against the defendants, Plaintiff Carlos Antonio Raymond respectfully prays and request relief in the form of having the wrongful Default Judgment set aside, or in the alternative for monetary damages resulting from Defendants' wrongs including among other things:  and the lost equity wrongfully taken from them by Defendants.TO:

(a) **ORDER: to grant PRELIMINARY INJUCTION that would enjoin or prohibit further efforts on the part of Defendant, Ivest Properties to remove him from the property without a court order or until all of his lawsuits are fully adjudicated**.

(b) **ORDER: to s**et aside (Void) or rescind the January 7, 2020 foreclosure sale and return Title to the Property Plaintiff, the original owner of the Property since 2009.

(c) Set-aside the DEFAULT JUDGEMENT.

(d) **ORDER: to** Rescind the JUDGEMENT for possession of the property

(e) **ORDER: to** Return Cash Bond, $ 1,700.00 (with Interest)

(f) **ORDER: to c**ompel Defendant, Ivest Properties to Hire a Contractor To Repair the Heating and Air Condition (URGENT NEED) at Not cost to Plaintiff. If this unit is not repair, Plaintiff will be forced to move into an hotel for the rest of the winter season due to complications with respiratory Bronchial Asthma and Bronchitis.

(g) **ORDER: to** and Order grant Temporary Restraining Order (TRO) – Preliminary Injunction – Permanent Restraining Order (PRO) for SIX MONTHS to enjoin Defendant from harassing, intimidating and evicting Plaintiff without a Court ORDER.

(h) **ORDER: to** Repair Credit Standing with each of the THREE credit Companies

(i) **ORDER: to** Return the lost equity wrongfully taken from Defendants by Plaintiff.

22

(j)  **ORDER:** Compensatory Damage in the amount in the amount to be awarded by this court or at trail.

(k) **ORDER: to arrange** a jury trial on all triable issues because there are FOUR Or More Defendants That The Jury Should Find Liable For Each Of Plaintiff's Raymond's Injuries: (1) J.P.M. CHASE BANK (2) FLAGSTAR BANK (3) IVEST PROPERTIES (4) LYDIA O'DONNEL (5) Others. Plaintiff (THROUGH) Appointed Counsel Bears The Burden Of Proving ACTUAL & PROXIMATE CAUSE.

Respectfully Submitted

Carlos Antonio Raymond

## CERTIFICATE OF SERVICE AND ACKNOWLEDMENT

STATE OF: Texas

COUNTY OF: Bexar

Before me this day December 19, 2020 personally appear, Carlos Antonio Raymond who being duly sworn, deposes and sayeth: I certify that on December 19, 2020 a correct copy of the foregoing PLAINTIFF'S ORIGINAL COMPLAINT FOR REDRESS was send and served counsel of record as shown below:

Matt D. Manning
Attorney For Star Flag Bank
State Bar No. 24070210
Matthew A. Knox
State bar No. 24071102
McGlinchey Stafford, PLLC
1001 Mc Kinney Street., Suite 1500
Houston, Texas 77002

December 19, 2020

BEFORE THE UNITED STATE DISTRICT COURT
WESTER DISTRICT OF TEXAS
San Antonio Division
655 E. Cesar Charvez
San Antonio, Texas 78206-1106

CARLOS ANTONIO RAYMOND,    )        **CIVIL ACTION CASE NO.**
                 Plaintiff )
                     V.S.   )  SA20CA1439
             FLAGSTAR      )
OTHER INDIVIDUALS AND COUNTY OFFICIALS, )
                Defendants  )        DECEMBER 18, 2020

                                        FB

No. 7010

www.legalstore.com

# PLAINTIFF'S EXHIBIT

1



## Homes for Sale Near 8054 Silver Grv



COMING SOON 12/13

**$235,000**
🛏 3bd  🛁 2ba  📐 1,648 sqft
6625 Charles Fld
Leon Valley, TX



FOR SALE BY OWNER

**$320,000** ↑
🛏 3bd  🛁 3ba  📐 2,482 sqft
10516 Lost Blf
Oak Bluff, San Antonio, TX



FOR SALE BY OWNER

**$219,000**
🛏 3bd  🛁 2ba  📐 1,520 sqft
8311 Knute Rockne St
Alamo Farmsteads-Babcock...



NEW   FOR SALE BY OWNER

**$249,900**
🛏 2bd  🛁 2ba  📐 1,393 sqft
12930 Pronghorn Oak
San Antonio, TX

## Description

**This property is no longer available to rent or to buy.**



HOT Deal Alert: This property deal has a high potential return. Make sure you strike while it's HOT so you don't miss your chance at a high potential ROI. The potential return is based on the estimated resale value and estimated credit bid for the property, and doesn't consider any repair, legal or transaction costs due to the current condition of the property. This property is being offered at Public Auction on 01-07-2020. Visit Auction.com now to view additional photos.



**Flagstar** ®
~~ **Bank**

5151 Corporate Drive
Troy, MI 48098-2639
(800) 968-7700
flagstar.com

*/ 9*

June 1~ ~19

Raymond Carlos Antonio
8054 Silver Gray
San Antonio, TX 78254

Mortgage Loan # 0440221622
Property Address:
8054 Silver Grv
San Antonio, TX 78254

Dear Flagstar Customer(s):

Thank you for your correspondence received on May 10, 2019 regarding information about the mortgage loan referenced above.

Regarding the validity of the debt, after thoroughly reviewing the loan it has been determined the debt is valid. We have reviewed the copy of the letter you received from Chase. The letter stated that they would pause the automatic mortgage payment. The December 2018 and January 2019 payments were not deferred and the payment needed to be mailed to the address they provided in the letter

With regards to your loan being referred for foreclosure, the foreclosure proceedings are currently on hold due to the loss mitigation file on the loan.

Our goal is to provide the highest quality service to each and every customer, and we apologize for any inconvenience we may have caused you.  If you have any questions concerning this resolution, please contact our Customer Service Department at (800) 968-7700, Monday –Friday 7:30 a.m.–8 p.m. or Saturday 7:30 a.m.–4 p.m. ET.

Sincerely,

Flagstar Bank



Notice of Error (NOE) or Request for Information (RFI) – If you believe there is an error ("Notice of Error") or if you need additional information ("Request for Information") relating to the servicing of your mortgage loan, you must send a written Notice of Error or Request for Information to the following address: Flagstar Bank, Attn: NOE/RFI, Mail Stop 2B-116, 5151 Corporate Drive, Troy, MI 48098-2639, Your Notice of Error or Request for Information must include your name, loan number, and sufficient detail to inform Flagstar of the basis of your Notice of Error or Request for Information.

```
P6461-45C                  CUSTOMER ACCOUNT ACTIVITY STATEMENT        DATE 03/16/20
REQ BY ARD                                                                PAGE 01

CARLOS ANTONIO RAYMOND
8054 SILVER GRAY
SAN ANTONIO     TX 78254


***************************************************************************************
-------------------- CURRENT ACCOUNT INFORMATION -------------------------
            DATE      TOTAL     PRINCIPAL    LOAN      CURRENT
            PAYMENT   PAYMENT   & INTEREST   INTEREST  PRINCIPAL          ESCROW
LOAN NUMBER DUE       AMOUNT    PAYMENT      RATE      BALANCE            BALANCE
0440221622  12-01-18  1064.21   0.00         5.00000   0.00               970.08
***************************************************************************************
              ACTIVITY FOR PERIOD 01-24-19 - 03-16-20
PROCESS  DUE    TRANSACTION        TRANSACTION                EFFECTIVE DATE
DATE     DATE   CODE               DESCRIPTION                OF TRANSACTION
-------------------------------------------------------------------------------
     TRANSACTION  PRIN PD/         ESCROW PD/      -------------OTHER------------
      AMOUNT      BALANCE  INTEREST  BALANCE     AMOUNT  CODE/DESCRIPTION
-------------------------------------------------------------------------------
02-05-20  12-18  173  PAYMENT
          0.00         0.00     0.00     0.00     331.76 *
                                                  331.76-
02-05-20  00-00  745  CORP. ADVANCE ADJUSTMENT
          331.76-      0.00     0.00     0.00
02-05-20  12-18  173  PAYMENT
          0.00         0.00     0.00     0.00     999.99 *
                                                  999.99-
02-05-20  00-00  745  CORP. ADVANCE ADJUSTMENT
          999.99-      0.00     0.00     0.00
02-05-20  12-18  173  PAYMENT
          0.00         0.00     0.00     0.00     999.99 *
                                                  999.99-
02-05-20  00-00  745  CORP. ADVANCE ADJUSTMENT
          999.99-      0.00     0.00     0.00
02-05-20  12-18  173  PAYMENT
          0.00         0.00     0.00     0.00     999.99 *
                                                  999.99-
02-05-20  00-00  745  CORP. ADVANCE ADJUSTMENT
          999.99-      0.00     0.00     0.00
02-05-20  12-18  173  PAYMENT
          0.00         0.00     0.00     0.00     999.99 *
                                                  999.99-
              5151 CORPORATE DR.
              TROY, MI 48098-2639
              PHONE: (800)968-7700
              FLAGSTAR.COM
```



USAA Confidential

0901119ca94dfa1f

```
P6461-45C              CUSTOMER ACCOUNT ACTIVITY STATEMENT         DATE 03/16/20
REQ BY ARD                                                            PAGE 02
CARLOS ANTONIO RAYMOND
LOAN NUMBER:  0440221622
                     ACTIVITY FOR PERIOD 01-24-19 - 03-16-20
PROCESS   DUE    TRANSACTION         TRANSACTION          EFFECTIVE DATE
DATE      DATE   CODE                DESCRIPTION          OF TRANSACTION
-----------------------------------------------------------------------------
     TRANSACTION      PRIN PD/              ESCROW PD/ --------------OTHER------------
       AMOUNT         BALANCE     INTEREST   BALANCE    AMOUNT  CODE/DESCRIPTION
-----------------------------------------------------------------------------
02-05-20  00-00  745  CORP. ADVANCE ADJUSTMENT
      999.99-          0.00        0.00       0.00
02-05-20  12-18  173  PAYMENT
        0.00           0.00        0.00       0.00       999.99 *
                                                         999.99-

02-05-20  00-00  745  CORP. ADVANCE ADJUSTMENT
      999.99-          0.00        0.00       0.00
02-05-20  12-18  173  PAYMENT
        0.00           0.00        0.00       0.00       999.99 *
                                                         999.99-

02-05-20  00-00  745  CORP. ADVANCE ADJUSTMENT
      999.99-          0.00        0.00       0.00
02-05-20  12-18  173  PAYMENT
        0.00           0.00        0.00       0.00       999.99 *
                                                         999.99-

02-05-20  00-00  745  CORP. ADVANCE ADJUSTMENT
      999.99-          0.00        0.00       0.00
02-03-20  00-00  632  STATUTORY EXPENSE DISBURSEMENT
       42.00           0.00        0.00       0.00
02-03-20  00-00  632  STATUTORY EXPENSE DISBURSEMENT
        4.30           0.00        0.00       0.00
01-31-20  12-18  181  PAID IN FULL
        0.00     132,821.04      715.52     964.51
                                                       134,501.07-
                                              970.08   NEW PRINCIPAL/ESCROW BALANCES
                   0.00
01-31-20  12-18  173  PAYMENT
        0.00           0.00        0.00       0.00        30.00 2 RETURNED CHECK FEE
                                                          30.00-
01-31-20  12-18  173  PAYMENT
        0.00           0.00        0.00       0.00       123.88 1 LATE CHARGE
                                                         123.88-
01-31-20  00-00  713  MISC. EXPENSE REPAYMENT
        0.00           0.00        0.00       0.00     4,287.92-
01-31-20  12-18  168  REPAY OF ESCROW ADV
        0.00           0.00        0.00     964.51-     964.51
                                              5.57     NEW PRINCIPAL/ESCROW BALANCES

                   5151 CORPORATE DR.
                   TROY, MI 48098-2639
                   PHONE: (800)968-7700
                   FLAGSTAR.COM
```



USAA Confidential

0901119ca94dfa1f

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **CARLOS ANTONIO RAYMOND,** | § § § § | |
| **Plaintiff,** | § | |
| **v.** | § § | **CIVIL ACTION NO. 5:20-CV-161** |
| **J.P. MORGAN CHASE BANK AND FLAGSTAR BANK,** | § § § § | |
| **Defendants.** | § | |

## DEFENDANT'S NOTICE OF REMOVAL

Defendant Flagstar Bank, FSB ("Flagstar" or "Defendant") hereby give notice of the removal of the state court civil action described below. As grounds for the removal, Flagstar respectfully states the following:

### I. INTRODUCTION

1.     On January 6, 2020, Plaintiff Carlos Antonio Raymond ("Plaintiff") filed his Petition and Application for a Temporary Restraining Order, numbered and styled as Cause No. 2020-CI-00279, *Carlos Antonio Raymond v. J.P. Morgan Chase Bank and Flagstar Bank* in the 45th Judicial District Court of Bexar County, Texas (the "Petition"). Plaintiff filed this matter despite the fact that another case involving the same parties and the same issues is already pending in the United States District Court for the Western District of Texas, San Antonio Division. That case is styled *Carlos Antonio Raymond v. J.P. Morgan Chase Bank and Flagstar Bank*; Civil Action No. 5:19-cv-00596-OLG-HJB.

2.     In the Petition, Plaintiffs brings suit against Flagstar and Defendant J.P. Morgan Chase Bank ("JPMC"). Plaintiff seeks injunctive relief and asserts claims for violation of his Fourth and Fourteenth Amendment rights pursuant to the United States Constitution. Plaintiff's

claims relate to certain residential property located at 8054 Silver Grove, San Antonio, Texas 78254 (the "Property").

3.      In accordance with 28 U.S.C. § 1446(a), copies of all process, pleadings, orders, and other papers filed in the state court action and obtained by Defendants are attached hereto and marked as composite **Exhibit A** and incorporated herein by reference[1].

## II. TIMELINESS OF NOTICE OF REMOVAL

4.      Flagstar has not been served with process. Therefore, this Notice of Removal is timely.[2]

## III. BASIS FOR REMOVAL: DIVERSITY JURISDICTION

5.      This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332. This action may be removed to this Court by Flagstar pursuant to 28 U.S.C. § 1441(b) because this action is between citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

### A.      Complete diversity exists.

6.      Complete diversity exists because Plaintiffs and Flagstar and JPMC are not citizens of the same state.

7.      Plaintiff claims he is a resident and citizens of Texas.[3]

8.      At the time of the commencement of the state court lawsuit and now, Flagstar was and is a non-Texas corporation domiciled in Michigan with its principal business office in Michigan. Pursuant to 28 U.S.C. § 1332(c)(1), "a corporation shall be deemed to be a citizen of

---

[1] Bexar County District Court records are not available online.  Defendant will supplement Exhibit A.
[2] *See* 28 U.S.C. § 1446(b).
[3] *See* Petition, p. 1, ¶2.

any State by which it has been incorporated and of the State where it has its principal place of business." Accordingly, for diversity purposes, Flagstar is a citizen of Michigan.

9.      At the time of the commencement of the state court lawsuit and now, JPMC was and is a non-Texas entity domiciled in Ohio with its principle offices in Ohio. Pursuant to 28 U.S.C. § 1332(c)(1), "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." Accordingly, for diversity purposes, JPMC is a citizen of Ohio.

10.     Plaintiffs are citizens of Texas, and Flagstar and JPMC are not a citizens of Texas. Therefore, complete diversity among the parties exists.

**B.      The amount in controversy exceeds $75,000.00.**

11.     In her Petition, Plaintiff seeks injunctive relief to prevent a foreclosure sale and eviction from the subject Property.[4] When such relief is sought, the amount in controversy is measured by the value of the object of the litigation.[5]

12.     When the object of the mortgagor's litigation is the protection of his or her entire property, the fair market value of the property is the proper measure of the amount in controversy.[6] In this instance, the value of the subject property, 8054 Silver Grove, San Antonio, Texas 78254, amounts to at least $201,880.00.[7] Therefore, based on the value of the relief sought by Plaintiff in the petition, the amount in controversy exceeds $75,000.00.

---

[4] *See* Petition, ¶¶55-59.
[5] *Farkas v. GMAC Mortg., LLC*, 737 F.3d 338,341 (5th Cir. 2013).
[6] *Id.*
[7] *See* Dallas Central Appraisal District Summary attached as **Exhibit B**. It is appropriate for the court to take judicial notice of the Dallas County appraisal because it is a public record and the information it provides is readily ascertainable and the source – the Dallas Central Appraisal District – cannot be reasonably questioned. *See Funk v.*

## IV. <u>VENUE</u>

13.    Venue for this Removal is proper in the United States District Court for the Western District of Texas, San Antonio Division, because this district and division includes Bexar County, Texas—the location of the pending state court action.[8]

## V. <u>ADDITIONAL REQUIREMENTS</u>

14.    Written Notice of Removal will be provided to Plaintiffs and filed with the District Clerk of Bexar County, Texas.

15.    This Notice of Removal is signed pursuant to Fed. R. Civ. P. 11. See 28 U.S.C. § 1446(a).

16.    In the event that Plaintiffs seeks to remand this case, or the Court considers remand *sua sponte*, Flagstar respectfully request the opportunity to submit such additional argument or evidence in support of removal as may be necessary.

17.    Plaintiffs did not demand a jury trial in the Petition.

WHEREFORE, having satisfied the requirements for removal, Defendant Flagstar Bank FSB gives notices that 2020-CI-00279, *Carlos Antonio Raymond v. J.P. Morgan Chase Bank and Flagstar Bank*, originally filed in the 45th District Court of Bexar County, Texas has been removed to this Court.

Respectfully submitted,

By:____/s/ Matt D. Manning_____
**MATT D. MANNING**
State Bar No. 24070210
**MCGLINCHEY STAFFORD**
1001 McKinney, Suite 1500
Houston, Texas 77002
Telephone : (713) 520-1900
Facsimile: (713) 520-1025
mmanning@mcglinchey.com

**ATTORNEYS FOR DEFENDANT
FLAGSTAR BANK, FSB**

---

[8] 28 U.S.C. § 124(d)(4) (stating that the San Antonio Division of the Western District includes Bexar County).

## CERTIFICATE AND NOTICE OF FILING

I certify that on February 10, 2020, this Notice of Removal was filed with the County Clerk of Bexar County, Texas, and that written notice of filing of the Notice of Removal was served via eFile.TXCourts.Gov, Court's ECF E-Filing Service, and/or email upon counsel for Plaintiff.

*/s/ Matt D. Manning*
**MATT D. MANNING**

## CERTIFICATE OF SERVICE

I hereby certify that on February 10, 2020, a copy of the above and foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing has been forwarded to all parties, by and through their attorneys of record, by operation of the Court's electronic filing system or by other means in accordance with the FEDERAL RULES OF CIVIL PROCEDURE.

*Via Certified Mail/Return Receipt Requested 9414 7266 9904 2120 8094 21*
*and Via Regular Mail*
Carlos Antonio Raymond
8054 Silver Grove
San Antonio, Texas 78254
*Pro se Plaintiff*

*/s/ Matt D. Manning*
**MATT D. MANNING**

21CO2020CV01312

| | |
|---|---|
| Plaintiff(s)<br>IVEST PROPEITES LLC<br><br>VS.<br>**Defendant(s)**<br>RAYMOND CARLOS ANTONIO | In the Justice Court<br><br>BEXAR PRECINCT 2,<br>Place 1<br><br>Bexar County, Texas |

(210) 335-4850

## WARNING

### NOTICE OF EVICTION

A Court Order (Writ of Possession) has been issued ordering the immediate eviction of
*All Occupants* from this property.

**8054 SILVER GROVE, SAN ANTONIO, TX 78254**

The Writ **WILL BE** executed on or after 12/4/20 at, or after 9:10A am

The Writ of Possession shall order the executing officer to:

A. Deliver possession of the premises to the Landlord or acting agent;
B. Instruct the tenant and all persons claiming under the tenant to leave the premises immediately, and, if the persons fail to comply, physically remove them;
C. Instruct the tenant to remove or to allow the landlord, the landlord's representatives, or other persons acting under the officer's supervision to remove all personal property from the rental unit other than personal property claimed to be owned by the landlord;
D. Place, or have an authorized person place, the removed property outside the rental unit at a nearby location, but not blocking a public sidewalk, passageway, or street and not while it is raining, sleeting, or snowing.

The officer under Section 7.003, Civil Practice and Remedies Code, is *NOT* liable for damages resulting from the execution of the writ if the officer executes the writ in good faith and with reasonable diligence. The officer may use *REASONABLE FORCE* in executing the writ.

After the execution of the writ, *ANY* persons entering the premises or remaining on the property without the effective consent of the plaintiff(s) or his acting agent, is subject to *PROSECUTION* under Sec.30.05 Texas Penal Code Criminal Trespass.

DO NOT DISREGARD THIS NOTICE

This notice is directed towards the **CURRENT OCCUPANTS** regardless whose name appears above
Contact the Writ Division for ALL questions regarding this notice.

(210) 335-4850

BEXAR PRECINCT 2

VACANT  * * *  OCCUPIED  * * *  UNKNOWN  * * *  SERVED  * * *  POSTED

Date Posted: 12/1/20  Time: 9:10 Am  Officer Signature _____

J. Gonzalez # 218

Deputy Constable, Precinct 2, Bexar County, Texas

DOC020

STATE OF TEXAS COUNTY OF BEXAR
CERTIFIED COPY CERTIFICATE
The page to which this certificate is affixed may have
been lawfully altered to redact confidential personal
information but is otherwise a full, true and correct
copy of the original on file and of record in my office



LUCY ADAME-CLARK
COUNTY CLERK
BEXAR COUNTY, TEXAS

8-3-2020
DATE                    BY: _____  DEPUTY

AFTER RECORDING RETURN TO:
Gardner Financial Services, Ltd.
1635 NE Loop 410, Suite 205
San Antonio, TEXAS 78209

This instrument was prepared by:
Law Office of Thomas G. Robins
1635 NE Loop 410, Suite 607
San Antonio, TEXAS 78209
210-821-6060

_CTX 1053520 A_          (Space Above This Line For Recording Data) _____

# DEED OF TRUST

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

VA Case Number: 62-62-6-1106726                    MIN: 100426900000010111

# NOTICE: THIS LOAN IS NOT ASSUMABLE WITHOUT THE APPROVAL OF THE DEPARTMENT OF VETERANS AFFAIRS OR ITS AUTHORIZED AGENT.

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated October 21, 2009, together with all Riders to this document.

(B) "Borrower" is CARLOS ANTONIO RAYMOND, SINGLE MAN. Borrower is the grantor under this Security Instrument.

(C) "Lender" is Gardner Financial Services, Ltd.. Lender is a Texas limited partnership, organized and existing under the laws of Texas.
Lender's address is 1635 NE Loop 410, Suite 205, San Antonio, TEXAS 78209. Lender includes any holder of the Note who is entitled to receive payments under the Note.

(D) "Trustee" is Robert D. Gardner, Jr.
Trustee's address is 1635 NE Loop 410, Suite 205, San Antonio, TEXAS 78209, Bexar County.

---

TEXAS–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT with MERS                    Form 3044 1/01
Page 1 of 13

IDS, Inc.                                                    Borrower(s) Initials _____


CERTIFIED COPY CERTIFICATE
The page to which this certificate is affixed may have been lawfully altered to redact confidential personal information but is otherwise a full, true and correct copy of the original on file and of record in my office

LUCY ADAME-CLARK
COUNTY CLERK
BEXAR COUNTY, TEXAS

8-3-2020
DATE          BY:          DEPUTY

(E) **"MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is a beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) **"Note"** means the promissory note signed by Borrower and dated October 21, 2009. The Note states that Borrower owes Lender ONE HUNDRED FIFTY-EIGHT THOUSAND SEVEN HUNDRED SEVENTY-FIVE AND NO/100 Dollars (U.S. $158,775.00) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than November 1, 2039.

(G) **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

(H) **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower (check box as applicable):

| | | | | | |
|---|---|---|---|---|---|
| ☐ | Adjustable Rate Rider | ☐ | Condominium Rider | ☐ | Second Home Rider |
| ☐ | Balloon Rider | ☒ | Planned Unit Development Rider | ☒ | VA Rider |
| ☐ | 1-4 Family Rider | ☐ | Biweekly Payment Rider | | |
| ☐ | Other (Specify) | | | | |

(J) **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) **"Escrow Items"** means those items that are described in Section 3.

(N) **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. § 2601 *et seq.*) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County of Bexar:

---

TEXAS-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT with MERS                          Form 3044 1/01
                                                Page 2 of 13

IOS, Inc.                                                              Borrower(s) Initials _____

STATE OF TEXAS COUNTY OF BEXAR
CERTIFIED COPY CERTIFICATE
The page to which this certificate is affixed may have
been lawfully altered to redact confidential personal
information but is otherwise a full, true and correct
copy of the original on file and of record in my office



LUCY ADAME-CLARK
COUNTY CLERK
BEXAR COUNTY, TEXAS

8-3-2020
DATE        BY        DEPUTY

**Lot 22, Block 32, SILVER OAKS SUBDIVISION UNIT 2 - PHASE B, an Addition in Bexar County, Texas, according to the plat thereof recorded in Volume 9591, Page 155, Deed and Plat Records, Bexar County, Texas.**

Parcel Identification Number:

which currently has the address of: **8054 Silver Grove**
                                    **San Antonio, TEXAS 78254**                              ("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

THE STATE OF TEXAS COUNTY OF BEXAR
CERTIFIED COPY CERTIFICATE
The page to which this certificate is affixed may have been lawfully altered to redact confidential personal information but is otherwise a full, true and correct copy of the original on file and of record in my office



LUCY ADAME-CLARK
COUNTY CLERK
BEXAR COUNTY, TEXAS

6-5-2024

DATE          BY:          DEPUTY

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender

STATE OF TEXAS COUNTY OF BEXAR
CERTIFIED COPY CERTIFICATE
The page to which this certificate is affixed may have been lawfully altered to redact confidential personal information but is otherwise a full, true and correct copy of the original on file and of record in my office

LUCY ADAME-CLARK
COUNTY CLERK
BEXAR COUNTY, TEXAS

8-3-2020 BY: ________
DATE DEPUTY

determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to. earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

STATE OF TEXAS COUNTY OF BEXAR
CERTIFIED COPY CERTIFICATE
The page to which this certificate is affixed may have
been lawfully altered to redact confidential personal
information but is otherwise a full, true and correct
copy of the original on file and of record in my office



LUCY ADAME-CLARK
COUNTY CLERK
BEXAR COUNTY, TEXAS

8-3-2020
DATE        BY: _____
                    DEPUTY

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full,



The page to which this certificate is affixed may have been lawfully altered to redact confidential personal information but is otherwise a full, true and correct copy of the original on file and of record in my office

LUCY ADAME-CLARK
COUNTY CLERK
BEXAR COUNTY, TEXAS

6-3-2020    BY: _____
DATE                          DEPUTY

and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has – if any – with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial


STATE OF TEXAS COUNTY OF BEXAR
CERTIFIED COPY CERTIFICATE
The page to which this certificate is affixed may have
been lawfully altered to redact confidential personal
information but is otherwise a full, true and correct
copy of the original on file and of record in my office

LUCY ADAME-CLARK
COUNTY CLERK
BEXAR COUNTY, TEXAS

8-3-2020  BY: _____
DATE              DEPUTY

taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or

CERTIFIED COPY CERTIFICATE
The page to which this certificate is affixed may have been lawfully altered to redact confidential personal information but is otherwise a full, true and correct copy of the original on file and of record in my office



**LUCY ADAME-CLARK**
COUNTY CLERK
BEXAR COUNTY, TEXAS

8-3-2020        BY: _____
DATE                    DEPUTY

when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan



STATE OF TEXAS COUNTY OF BEXAR
CERTIFIED COPY CERTIFICATE
The page to which this certificate is affixed may have
been lawfully altered to redact confidential personal
information but is otherwise a full, true and correct
copy of the original on file and of record in my office

LUCY ADAME-CLARK
COUNTY CLERK
BEXAR COUNTY, TEXAS

8-3-2020         BY: _____
DATE                      DEPUTY

servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence. For the purposes of this Section 22, the term "Lender" includes any holder of the Note who is entitled to receive payments under the Note.

STATE OF TEXAS COUNTY OF BEXAR
CERTIFIED COPY CERTIFICATE
The page to which this certificate is affixed may have
been lawfully altered to redact confidential personal
information but is otherwise a full, true and correct
copy of the original on file and of record in my office



LUCY ADAME-CLARK
COUNTY CLERK
BEXAR COUNTY, TEXAS

8-3-2020          BY: _____
DATE                    DEPUTY

If Lender invokes the power of sale, Lender or Trustee shall give notice of the time, place and terms of sale by posting and filing the notice at least 21 days prior to sale as provided by Applicable Law. Lender shall mail a copy of the notice to Borrower in the manner prescribed by Applicable Law. Sale shall be made at public vendue. The sale must begin at the time stated in the notice of sale or not later than three hours after that time and between the hours of 10 a.m. and 4 p.m. on the first Tuesday of the month. Borrower authorizes Trustee to sell the Property to the highest bidder for cash in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying indefeasible title to the Property with covenants of general warranty from Borrower. Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Property is sold pursuant to this Section 22, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession or other court proceeding.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall provide a release of this Security Instrument to Borrower or Borrower's designated agent in accordance with Applicable Law. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Substitute Trustee; Trustee Liability. All rights, remedies and duties of Trustee under this Security Instrument may be exercised or performed by one or more trustees acting alone or together. Lender, at its option and with or without cause, may from time to time, by power of attorney or otherwise, remove or substitute any trustee, add one or more trustees, or appoint a successor trustee to any Trustee without the necessity of any formality other than a designation by Lender in writing. Without any further act or conveyance of the Property the substitute, additional or successor trustee shall become vested with the title, rights, remedies, powers and duties conferred upon Trustee herein and by Applicable Law.

Trustee shall not be liable if acting upon any notice, request, consent, demand, statement or other document believed by Trustee to be correct. Trustee shall not be liable for any act or omission unless such act or omission is willful.

25. Subrogation. Any of the proceeds of the Note used to take up outstanding liens against all or any part of the Property have been advanced by Lender at Borrower's request and upon Borrower's representation that such amounts are due and are secured by valid liens against the Property. Lender shall be subrogated to any and all rights, superior titles, liens and equities owned or claimed by any owner or holder of any outstanding liens and debts, regardless of whether said liens or debts are acquired by Lender by assignment or are released by the holder thereof upon payment.

26. Partial Invalidity. In the event any portion of the sums intended to be secured by this Security Instrument cannot be lawfully secured hereby, payments in reduction of such sums shall be applied first to those portions not secured hereby.

27. Purchase Money; Owelty of Partition; Renewal and Extension of Liens Against Homestead Property; Acknowledgment of Cash Advanced Against Non-Homestead Property. Check box as applicable:

☒ Purchase Money.
The funds advanced to Borrower under the Note were used to pay all or part of the purchase price of the Property. The Note also is primarily secured by the vendor's lien retained in the deed of even date with this Security Instrument conveying the Property to Borrower, which vendor's lien has been assigned to Lender, this Security Instrument being additional security for such vendor's lien.

☐ Owelty of Partition.
The Note represents funds advanced by Lender at the special instance and request of Borrower for the purpose of acquiring the entire fee simple title to the Property and the existence of an owelty of partition imposed against the entirety of the Property by a court order or by a written agreement of the parties to the partition to secure the payment of the Note is expressly acknowledged, confessed and granted.

☐ Renewal and Extension of Liens Against Homestead Property.
The Note is in renewal and extension, but not in extinguishment, of the indebtedness described on the attached Renewal and Extension Exhibit which is incorporated by reference. Lender is expressly subrogated to all rights, liens and remedies securing the original

holder of a note evidencing Borrower's indebtedness and the original liens securing the indebtedness are renewed and extended to the date of maturity of the Note in renewal and extension of the indebtedness.

☐   **Acknowledgment of Cash Advanced Against Non-Homestead Property.**

The Note represents funds advanced to Borrower on this day at Borrower's request and Borrower acknowledges receipt of such funds. Borrower states that Borrower does not now and does not intend ever to reside on, use in any manner, or claim the Property secured by this Security Instrument as a business or residential homestead. Borrower disclaims all homestead rights, interests and exemptions related to the Property.

**28. Loan Not a Home Equity Loan.** The Loan evidenced by the Note is not an extension of credit as defined by Section 50(a)(6) or Section 50(a)(7), Article XVI, of the Texas Constitution. If the Property is used as Borrower's residence, then Borrower agrees that Borrower will receive no cash from the Loan evidenced by the Note and that any advances not necessary to purchase the Property, extinguish an owelty lien, complete construction, or renew and extend a prior lien against the Property, will be used to reduce the balance evidenced by the Note or such Loan will be modified to evidence the correct Loan balance, at Lender's option. Borrower agrees to execute any documentation necessary to comply with this Section 28.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____   (Seal)
Carlos Antonio Raymond                        -Borrower

_____   (Seal)
                                              -Borrower

STATE OF TEXAS COUNTY OF BEXAR
CERTIFIED COPY CERTIFICATE
The page to which this certificate is affixed may have
been lawfully altered to redact confidential personal
information but is otherwise a full, true and correct
copy of the original on file and of record in my office.

LUCY ADAME-CLARK
COUNTY CLERK
BEXAR COUNTY, TEXAS

8-3-2020 BY: _____
DATE              DEPUTY

STATE OF TEXAS _Bexar_
County of _Bexar_      ss:

Before me _the undersigned notary_ on this day personally appeared Carlos Antonio Kny~~~~
me on the oath of _____ or through _photo ID_ ) to be the person whose name is subscr~~
foregoing instrument and acknowledged to me that he/she/they executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this _____ day of _____ **OCT 2 6 2009** _____.

My Commission Expires: _____

(Seal)

> KIMI-KAI R. SHAW
> Notary Public, State of Texas
> My Commission Expires
> FEBRUARY 22, 2013

_____
Notary Public

Form 3044  1/01

IDS, Inc

Borrower(s) Initials _PK_ _____

STATE OF TEXAS COUNTY OF BEXAR
CERTIFIED COPY CERTIFICATE
The page to which this certificate is affixed may have
been lawfully altered to redact confidential personal
information but is otherwise a full, true and correct
copy of the original on file and of record in my office

LUCY ADAME-CLARK
COUNTY CLERK
BEXAR COUNTY, TEXAS

8-3-2022
DATE     BY: _____ DEPUTY

MIN: 100426900000010111

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this 21st day of October, 2009, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to **Gardner Financial Services, Ltd., a Texas limited partnership** (the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

<p align="center">8054 Silver Grove<br>San Antonio, TEXAS 78254<br>(Property Address)</p>

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in

<p align="center">Covenants, Conditions and Restrictions of Record</p>

(the "Declaration"). The Property is a part of a planned unit development known as

<p align="center">Silver Oaks<br>(Name of Planned Unit Development)</p>

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. PUD Obligations.** Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory

**MULTISTATE PUD RIDER - Single Family –**
**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
**Form 3150 1/01**

<p align="center">Page 1 of 3</p>

VMP- 7R (0811)

STATE OF TEXAS COUNTY OF BEXAR
CERTIFIED COPY CERTIFICATE
The page to which this certificate is affixed may have
been lawfully altered to redact confidential personal
information but is otherwise a full, true and correct
copy of the original on file and of record in my office

LUCY ADAME-CLARK
COUNTY CLERK
BEXAR COUNTY, TEXAS

8-3-2020 BY:
DATE          DEPUTY

Initials _PK_ _____

to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**MULTISTATE PUD RIDER - Single Family –**
**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
**Form 3150 1/01**

Page 2 of 3

VMP- 7R (0811)

STATE OF TEXAS COUNTY OF BEXAR
CERTIFIED COPY CERTIFICATE
The page to which this certificate is affixed may have
been lawfully altered to redact confidential personal
information but is otherwise a full, true and correct
copy of the original on file and of record in my office

LUCY ADAME-CLARK
COUNTY CLERK
BEXAR COUNTY, TEXAS

DATE        BY:        DEPUTY

Initials _____

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this PUD Rider.

_____ (Seal)          _____ (Seal)
Carlos Antonio Raymond          -Borrower                                                   -Borrower



STATE OF TEXAS COUNTY OF BEXAR
CERTIFIED COPY CERTIFICATE
The page to which this certificate is affixed may have
been lawfully altered to redact confidential personal
information but is otherwise a full, true and correct
copy of the original on file and of record in my office

LUCY ADAME-CLARK
COUNTY CLERK
BEXAR COUNTY, TEXAS

8-3-2020     BY: _____
DATE                    DEPUTY

**MULTISTATE PUD RIDER** - Single Family –
**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
**Form 3150 1/01**
                                        Page 3 of 3

VMP- **7R** (0811)

STATE OF TEXAS COUNTY OF BEXAR
CERTIFIED COPY CERTIFICATE
The page to which this certificate is affixed may have
been lawfully altered to redact confidential personal
Information but is otherwise a full, true and correct
copy of the original on file and of record in my office



LUCY ADAME-CLARK
COUNTY CLERK
BEXAR COUNTY, TEXAS

8-3-2020                BY:
DATE                              DEPUTY

VA Number:  62-62-6-1106726

# VA GUARANTEED LOAN AND
# ASSUMPTION POLICY RIDER

## NOTICE:   THIS LOAN IS NOT ASSUMABLE WITHOUT THE APPROVAL OF THE DEPARTMENT OF VETERANS AFFAIRS OR ITS AUTHORIZED AGENT.

THIS V.A. GUARANTEED LOAN AND ASSUMPTION POLICY RIDER is made this 21st day of October, 2009, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Deed to Secure Debt (herein "Security Instrument") dated of even date herewith, given by the undersigned (herein "Borrower") to secure Borrower's Note to

**Gardner Financial Services, Ltd., a Texas limited partnership**

(herein "Lender")

and covering the Property described in the Security Instrument and located at

**8054 Silver Grove
San Antonio, TEXAS 78254**

(Property Address)

**V.A. GUARANTEED LOAN COVENANT:**  In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

If the indebtedness secured hereby be guaranteed or insured under Title 38, United States Code, such Title and Regulations issued thereunder and in effect on the date hereof shall govern the rights, duties and liabilities of Borrower and Lender.  Any provisions of the Security Instrument or other instruments executed in connection with said indebtedness which are inconsistent with said Title or Regulations, including, but not limited to, the provision for payment of any sum in connection with prepayment of the secured indebtedness and the provision that the Lender may accelerate payment of the secured indebtedness pursuant to Covenant 18 of the Security Instrument, are hereby amended or negated to the extent necessary to conform such instruments to said Title or Regulations.

**LATE CHARGE:**  At Lender's option, Borrower will pay a "late charge" not exceeding four per centum (4%) of the overdue payment of principal and interest when paid more than fifteen (15) days after the due date thereof to cover the extra expense involved in handling delinquent payments, but such "late charge" shall not be payable out of the proceeds of any sale made to satisfy the indebtedness secured hereby, unless such proceeds are sufficient to discharge the entire indebtedness and all proper costs and expenses secured hereby.

**GUARANTY:**  Should the Department of Veterans Affairs fail or refuse to issue its guaranty in full amount within 60 days from the date that this loan would normally become eligible for such guaranty committed upon by the Department of Veterans Affairs under the provisions of Title 38 of the U.S. Code "Veterans Benefits," the Mortgagee may declare

---

VA Guaranteed Loan & Assumption Policy Rider

Page 1 of 2

Borrower(s) Initials 

IDS, Inc.

the indebtedness hereby secured at once due and payable and may foreclose immediately or may exercise any other rights hereunder or take any other proper action as by law provided.

**TRANSFER OF THE PROPERTY:** This loan may be declared immediately due and payable upon transfer of the property securing such loan to any transferee, unless the acceptability of the assumption of the loan is established pursuant to Section 3714 of Chapter 37, Title 38, United States Code.

An authorized transfer ("assumption") of the property shall also be subject to additional covenants and agreements as set forth below:

(a) ASSUMPTION FUNDING FEE: A fee equal to one-half of 1 percent (.50%) of the unpaid principal balance of this loan as of the date of transfer of the property shall be payable at the time of transfer to the loan holder or its authorized agent, as trustee for the Department of Veterans Affairs. If the assumer fails to pay this fee at the time of transfer, the fee shall constitute an additional debt to that already secured by this instrument, shall bear interest at the rate herein provided, and, at the option of the payee of the indebtedness hereby secured or any transferee thereof, shall be immediately due and payable. This fee is automatically waived if the assumer is exempt under the provisions of 38 U.S.C. 3729 (c).

(b) ASSUMPTION PROCESSING CHARGE: Upon application for approval to allow assumption of this loan, a processing fee may be charged by the loan holder or its authorized agent for determining the creditworthiness of the assumer and subsequently revising the holder's ownership records when an approved transfer is completed. The amount of this charge shall not exceed the maximum established by the Department of Veterans Affairs for a loan to which Section 3714 of Chapter 37, Title 38, United States Code applies.

(c) ASSUMPTION INDEMNITY LIABILITY: If this obligation is assumed, then the assumer hereby agrees to assume all of the obligations of the veteran under the terms of the instruments creating and securing the loan. The assumer further agrees to indemnify the Department of Veterans Affairs to the extent of any claim payment arising from the guaranty or insurance of the indebtedness created by this instrument.

IN WITNESS WHEREOF, Borrower(s) has executed this VA Guaranteed Loan And Assumption Policy Rider.

_____ (Seal)
Carlos Antonio Raymond          -Borrower

_____ (Seal)
                                -Borrower

STATE OF TEXAS COUNTY OF BEXAR
CERTIFIED COPY CERTIFICATE
The page to which this certificate is affixed may have
been lawfully altered to redact confidential personal
information but is otherwise a full, true and correct
copy of the original on file and of record in my office

**LUCY ADAME-CLARK**
COUNTY CLERK
BEXAR COUNTY, TEXAS

8-3.2620    BY: _____
DATE              DEPUTY

Doc# 20090209348
# Pages 19
10/27/2009   14:41:38 PM
e-Filed & e-Recorded in the
Official Public Records of
BEXAR COUNTY
GERARD RICKHOFF COUNTY CLERK

Fees 84.00



STATE OF TEXAS COUNTY OF BEXAR
CERTIFIED COPY CERTIFICATE
The page to which this certificate is affixed may have
been lawfully altered to redact confidential personal
information but is otherwise a full, true and correct
copy of the original on file and of record in my office

LUCY ADAME-CLARK
COUNTY CLERK
BEXAR COUNTY, TEXAS

8-3-2020   BY: _____
DATE            DEPUTY

STATE OF TEXAS
COUNTY OF BEXAR
This is to Certify that this document
was e-FILED and e-RECORDED in the Official
Public Records of Bexar County, Texas
on this date and time stamped thereon.
10/27/2009   14:41:38 PM
COUNTY CLERK, BEXAR COUNTY TEXAS



# Lucy Adame-Clark



COUNTY CLERK          BEXAR COUNTY

BEXAR COUNTY COURTHOUSE
100 DOLOROSA, SUITE 104
SAN ANTONIO, TEXAS 78205

## CERTIFICATE

STATE OF TEXAS §

COUNTY OF BEXAR §

    I, LUCY ADAME-CLARK, COUNTY CLERK OF BEXAR COUNTY, TEXAS, DO HEREBY CERTIFY THAT THE FOREGOING IS A TRUE AND CORRECT COPY OF THE OFFICIAL PUBLIC RECORDS OF REAL PROPERTY OF BEXAR COUNTY, TEXAS, NOW IN MY LAWFUL CUSTODY AND POSSESSION AS SAME APPEARS OF RECORD FILED IN:

DOCUMENT NUMBER   20090209348   VOLUME   14229   PAGE   692

    THIS COPY MAY HAVE BEEN ALTERED TO REDACT CONFIDENTIAL PERSONAL INFORMATION AS REQUIRED BY TEXAS GOVERNMENT CODE 552.147.

    IN TESTIMONY WHEREOF, WITNESS MY HAND AND OFFICIAL SEAL OF OFFICE GIVEN IN THE CITY OF SAN ANTONIO, BEXAR COUNTY, TEXAS, ON THIS

3RD   DAY OF   AUGUST   A. D. ,   2020   .

LUCY ADAME-CLARK
COUNTY CLERK
BEXAR COUNTY, TEXAS

BY: _____

**Deputy County Clerk**

ANY PROVISION HEREIN WHICH RESTRICTS THE SALE, RENTAL, OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF RACE, COLOR, RELIGION, SEX, HANDICAP, FAMILIAL STATUS OR NATIONAL ORIGIN IS INVALID AND UNENFORCEABLE UNDER FEDERAL LAW.